## Connecticut Light and Power Company *v.*
## City of Norwalk

Cotter, C. J., Bogdanski, Longo, Peters and Rubinow, Js.

Argued June 12—decision released September 11, 1979

*James V. Minor,* corporation counsel, for the appellant (defendant).

*Paul W. Orth,* with whom was *Austin Carey, Jr.,* for the appellee (plaintiff).

PETERS, J. This is an appeal from a judgment that the defendant has illegally refused to exempt from local taxation certain oil-burning equipment owned by the plaintiff that has been certified as tax exempt by the commissioner of environmental protection. At trial and on this appeal, the defendant city of Norwalk has challenged the constitutional sufficiency of the procedures used by the department of environmental protection in granting the certificate of tax exemption to the plaintiff Connecticut Light and Power Company.

The facts underlying this case are not in dispute. The plaintiff Connecticut Light and Power Company owns real and personal property located within the geographical tax boundaries of the defendant city of Norwalk. This property includes an electric generating plant on Manresa Island known as the Norwalk Harbor Station. Between 1970 and 1972, the power source for this plant's generators was converted from coal to oil-burning equipment. The total cost of the conversion was $5,795,133, and it resulted in an increased assessment on the city's personal property tax rolls in the amount of $2,428,180. The oil-burning equipment was assessed on this basis on the tax lists of September 1, 1972, September 1, 1973, and September 1, 1974, although the plaintiff applied for certification for tax relief to the commissioner of environmental protection on November 14, 1972. The defendant was not notified of the plaintiff's intent to seek an exemption under General Statutes § 12-81 (52),[1] nor of its actual application for exemption. After

---

[1] "[General Statutes] Sec. 12-81. EXEMPTIONS. The following-described property shall be exempt from taxation: . . . (52) STRUCTURES AND EQUIPMENT FOR AIR POLLUTION CONTROL. Structures and equipment acquired by purchase or lease after July 1, 1967, for the primary purpose of reducing, controlling or eliminating

receipt of the plaintiff's application, the department of environmental protection sent two engineers to inspect the new oil-burning equipment to determine whether the conversion met the requirements of air pollution control. Upon the affirmative report of these inspectors, without a hearing of any kind, and without notice to the defendant, the deputy commissioner of environmental protection certified that the plaintiff's equipment was approved as being "for the primary purpose of reducing, controlling or eliminating air pollution," within § 12-81 (52). The department of environmental protection notified the assessor of the city of Norwalk, on March 12, 1974,[2] of the action taken by the department on the plaintiff's application and enclosed a copy of the certificate of exemption. The plaintiff did not immediately claim its tax exemption, since it was by then too late to affect the tax list of September 1, 1973, which was the determinative list for current tax liability. The letter of notification did not advise the defendant city that there was an available right of appeal, and the defendant did not then take an appeal.

The issue of the plaintiff's right to an exemption for its oil-burning equipment came to a head when in October, 1974, the plaintiff deleted this equipment

air pollution, certified as approved for such purpose by the commissioner of environmental protection. Said commissioner may certify to a portion of structures and equipment so acquired to the extent that such portion shall have as its primary purpose the reduction, control or elimination of air pollution . . . ."

[2] The letter notifying the assessor of the tax exemption certification indicated that notice was being given pursuant to "Section 12-84 of Chapter 360 of the General Statutes of Connecticut." We have been unable, however, either to ascertain the source of this erroneous citation or to locate any provision of the General Statutes specifically requiring the department to notify assessors regarding tax certification. But see Public Acts 1979, No. 79-149.

from the sworn list of its taxable personal property. The defendant, through its board of tax review, ultimately disallowed the claimed exemption on April 24, 1975. The plaintiff thereupon initiated the present action alleging that the city's tax commissioner and board of tax review had acted illegally in refusing to honor the certification of the department of environmental protection. Although the defendant initially interposed a number of defenses addressing the merits of the department's certification, the defendant presented no evidence at trial either to rebut the factual accuracy of the findings of the department or to demonstrate that the department had acted improperly, arbitrarily, capriciously, or illegally. The defendant instead relied upon its seventh special defense of denial of due process of law pursuant to the fourteenth amendment of the constitution of the United States and article first, § 8 of the constitution of the state of Connecticut. When the trial court rendered judgment for the plaintiff, this appeal by the defendant city followed.

There are three issues before us on this appeal: (1) does the defendant, a municipality, have standing to challenge the constitutionality of a state statute? (2) is such a challenge foreclosed by the defendant's failure to take a direct appeal from the issuance of the certificate of tax exemption? and (3) do the challenged procedures of the department of environmental protection violate the defendant's rights to due process?

The issue of standing arises out of the perceived inconsistency of allowing a municipality, which is a creation of state legislation, to challenge the constitutionality of other acts of legislation by its creator. This constraint on municipal standing, first

articulated in *Williams* v. *Mayor,* 289 U.S. 36, 40, 53 S. Ct. 431, 77 L. Ed. 1015 (1933), has in recent years undergone considerable erosion, both in the United States Supreme Court; *Sierra Club* v. *Morton,* 405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972); *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970); *Flast* v. *Cohen,* 392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968); and in this court. *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 (1974); *Tough* v. *Ives,* 162 Conn. 274, 294 A.2d 67 (1972); *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318 (1971); *Sanger* v. *Bridgeport,* 124 Conn. 183, 198 A. 746 (1938). As we stated in *Ducharme* v. *Putnam,* supra, 139, a municipality that is in court on nonconstitutional questions, as to which this question of standing is not a barrier, often has a legitimate stake in full exploration of the constitutionality of contested legislation. "In the absence of some overriding reason which we do not find, such as the existence of a more appropriate party to raise the question, or a statute prohibiting municipalities from litigating constitutional issues, it would be an abdication of judicial responsibility for this court, having before it a controversy between a municipality and another party and having been apprised of the asserted constitutional infirmity in a legislative act, adversely affecting the interests of the municipality and its inhabitants, to adjudicate only the nonconstitutional questions when the latter may not be dispositive of the basic dispute." We therefore hold, as did the trial court, that the defendant city has sufficient standing to raise the constitutionality of the procedures employed by the department of environmental protection in this case.

The plaintiff argues vigorously on this appeal that even if the defendant had the right to challenge the process of certification that led to its tax exemption, that right should have been exercised by an immediate appeal from the notification of the issuance of the certificate in March, 1974. It is now clear that such an appeal would have been appropriate, either under General Statutes § 25-17; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978); or under General Statutes § 4-183 of the Uniform Administrative Procedure Act. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977). The failure to take a direct appeal is not excused either by the absence of prior warning of the state administrative proceedings to effect a local tax exemption or by the sparsity of information in the notification issued to the defendant by the department of environmental protection.[3] While full disclosure, at least of the defendant's right to appeal, would be preferable as a matter of policy, the governing statutes contain no such requirements.

---

[3] The text of the notification is as follows:

"Mr. Joseph Wojciechowski          March 12, 1974
Assessor
City Hall
Norwalk, Connecticut 06360

Dear Mr. Wojciechowski:

Under Section 12-84 of Chapter 360 of the General Statutes of Connecticut this Department is required to notify the Assessors regarding tax certification.

I also enclose a copy of Certification Number 199 for air pollution control equipment for The Connecticut Light & Power Company.

Very truly yours,

s/Solomon D. Schneider

Solomon D. Schneider
Senior Air Pollution Engineer"

The failure to follow the route of direct appeal, no matter how inadvertent, forecloses collateral inquiry into the fact-finding by the administrative agency. Cf. *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178–79, 422 A.2d 290 (1979); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357–59, 377 A.2d 1099 (1977); *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963). In this case, therefore, the defendant could not in these proceedings have prevailed on its first six affirmative defenses challenging the extent to which the plaintiff's oil-burning equipment in fact complied with the requirements of General Statutes § 12-81 (52). The defendant was accordingly well advised when it did not pursue these defenses in the court below.

The failure to exhaust administrative remedies is not however equally conclusive when the issue is the constitutional propriety of the procedures used by the administrative agency in discharge of its statutory responsibility. Although such questions also might have been raised on direct appeal, we are not prepared to say that direct appeal is necessarily the exclusive route for testing basic constitutional infirmity. Cf. *Aaron* v. *Conservation Commission,* supra; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 104–105, 291 A.2d 721 (1971). Two circumstances lead us to conclude that the constitutional issue is properly before us: The defendant concededly did not deliberately decide to bypass a direct appeal, and the plaintiff apparently did not, in the trial court, argue the foreclosing effect of the failure to appeal. Cf. *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

We turn therefore to the final issue on this appeal: Do the procedures of the department of environmental protection for certifying tax exempt air pollution control equipment meet the requirements of due process of law under the fourteenth amendment of the constitution of the United States and article first, § 8 of the constitution of the state of Connecticut? The proceedings conducted in this case by the department of environmental protection were ex parte, affording to the defendant city neither notice nor an opportunity for a hearing. The department has issued no written regulations or guidelines to govern its administration of tax exemption certificates. The certificate was issued on the basis of an engineering report attesting to the compliance of the plaintiff's facility with the statutory requirements for tax relief without any further statement of reasons by the department itself for its decision to authorize removal of the plaintiff's property from the defendant's tax rolls. The defendant had the right, as an "interested person," to request the promulgation of regulations under General Statutes § 4-174, and it had the right to obtain a direct review of the department's action in the Superior Court. Despite the defendant's argument to the contrary, we agree with the trial court that these rights and procedures are constitutionally sufficient.

The most serious of the defendant's claims concerns its right to participate in a hearing *before* the department decides whether to grant a certificate, since subsequent judicial review affords only a limited opportunity to overturn a prior administrative determination. There is however no universal right to be heard in any and all administrative proceedings. When an agency is acting in an

administrative capacity, rather than in a legislative, judicial, or quasi-judicial capacity, the agency is empowered to act without recourse to public hearings. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967). Hearings are not required to determine the propriety of a change in retirement plans; *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 471–72, 378 A.2d 547 (1977); or to determine whether a proposal for a subdivision conforms to existing zoning regulations. *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 674–75; see also *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 52, 282 A.2d 890 (1971); *Bloom* v. *Water Resources Commission,* 157 Conn. 528, 537, 254 A.2d 884 (1969). An administrative decision that calls primarily for fact-finding, especially where that fact-finding requires technical or professional expertise, may appropriately depend upon inspection, examination, or testing, rather than upon an adversary hearing. See Davis, Administrative Law Text (3d Ed. 1972) § 7.10; cf. *Parham* v. *J.L. and J.R.,* 442 U.S. 584, 612, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979). Certainly the determination of the effectiveness of new equipment in reducing air pollution is the kind of inquiry that falls squarely within the rubric of action taken in an administrative capacity.

Administrative decision-making without a hearing is constitutionally validated, furthermore, by providing an aggrieved party a subsequent opportunity for judicial review. Our cases have consistently held that one hearing before final action is all that is constitutionally required. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* supra, 52–53; *Fishman* v. *Stamford,* 159 Conn. 116,

120, 267 A.2d 443 (1970), cert. denied, 399 U.S. 905, 90 S. Ct. 2197, 26 L. Ed. 2d 560 (1971); *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 527, 265 A.2d 75 (1969), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970); *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 246, 149 A.2d 691 (1959); *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 85, 130 A. 289 (1925). The right to appeal under General Statutes §§ 25-17 and 4-183 constitutes an adequate constitutional safeguard of the rights of the defendant city, both as to its right to be heard before final judgment and as to its other claims concerning the inadequacy of the administrative record. The function of the trial court, upon appeal from an administrative action, is to determine whether the board or agency has acted illegally. The scope of the judicial hearing addressed to that question will reflect the fullness or the sparsity of the administrative record. To the extent that the administrative record is uninformative, the trial court has a correlatively greater responsibility to hear new evidence to ascertain whether the administrative action was legally warranted. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* supra, 56-57. Although even such a judicial review after the fact of administrative action is not fully equivalent to prior participation in the process of administrative decision-making, it is constitutionally sufficient for the adjudication of claims for tax exemption.

There is no error.

In this opinion the other judges concurred.